FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ JUN 0 1 2009 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
PHYLLIS SHERIFF-WHITE, D.O.,

                   **Plaintiff,**

          **-against-**

EPISCOPAL HEALTH SERVICES INC., d/b/a
ST. JOHN'S EPISCOPAL HOSPITAL, SOUTH SHORE
DIVISION and JERALD KORMAN, M.D.,

                   **Defendants.**
-------------------------------------------------------------------X

DOCKET NO.:____

**09      2296**

**COMPLAINT**

**PLAINTIFF
DEMANDS TRIAL
BY A JURY**

**MATSUMOTO, J.**

Plaintiff, Phyllis Sheriff-White, D.O., ("Plaintiff" or "Dr. White"), by her attorney, Law

Office of Vincent I. Eke-Nweke, P.C., as for her Complaint against the Defendants Episcopal Health

Services Inc., d/b/a St. John's Episcopal Hospital, South Shore Division ("SJEH") and Jerald

Korman, M.D., ("Dr. Korman"), ("together Defendants"), alleges upon information and belief, as

follows:

## I. NATURE OF THE ACTION

1.     Dr. White brings this action to remedy discrimination and hostile work environment

on the basis of race and gender in the terms, conditions, and privileges of employment in violation

of the Civil Rights Act of 1866, 42 U.S.C. § 1981 (§ 1981), the New York State Human Rights Law,

Executive Law § 290 *et seq.* (Human Rights Law) and the Administrative Code of the City of New

York, § 8-101 *et seq.* (City Law).

2.     In addition, Dr. White claims that, in violation of all those laws, Defendants retaliated

against her for having complained about Defendants' unlawful and discriminatory acts towards her.

Dr. White further claims that SJEH breached its obligations and the implied covenant of good faith

and fair dealing under the Employment Contract dated June 30, 2006, entered into by Dr. White, on

the one hand, and SJEH, on the other hand ("Employment Contract"), in violation of the Common Law of the State of New York.

3.    Dr. White seeks monetary relief, including back pay, front pay, compensatory and punitive damages, attorney's fees and costs of the action, injunctive relief consisting of an order requiring SJEH to reinstate Dr. White to her position and restore her privileges, declaratory and other appropriate legal and equitable relief pursuant to § 1981, the Human Rights Law, the City Law, and the Common Law of the State of New York.

## II.   JURISDICTION AND VENUE

4.    Jurisdiction of the subject matter of this action is established in this court by § 1981.

5.    All causes of action not relying exclusively on the aforementioned federal causes of action as a basis of this court's jurisdiction, are based on the court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367, to hear related state law causes of action. The events, parties, transactions, and injuries that form the basis of Dr. White's federal claim are identical to the events, parties, transactions, and injuries that form the basis of Dr. White's claims brought under the Human Rights Law, the City Law and Common Law.

6.    As the unlawful employment practices complained of herein occurred within the Eastern District of New York and Defendants regularly do business within this District, venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and ©.

## III.  SATISFACTION OF PROCEDURAL PREREQUISITES FOR SUIT

7.    Pursuant to § 8-502 of the City Law, prior to filing the Complaint in this action with the Court, a copy thereof was served on the City of New York Corporation Counsel and the New York City Commission on Human Rights.

8.     Given Defendants' deliberate conduct, it is futile to expect that Defendants would permit Dr. White to exhaust any applicable administrative procedures.

## IV.  THE PARTIES

9.     Dr. White is 41 years of age and a Black Female. At all relevant times, Dr. White was and still is resident within Brooklyn, Kings County, City and State of New York and is an employee within the meaning of § 1981, the Human Rights Law and the City Law.

10.     Defendant SJEH is a domestic not-for-profit corporation, duly incorporated under the laws of the State of New York and operates a hospital known as St. John's Episcopal Hospital, South Shore Division ("Hospital"), at or near 327 Beach 19th Street, Far Rockaway, Queens County, New York.

11.     At all times herein mentioned, Dr. Korman, Caucasian male, was and still is employed by SJEH as the Chairman of the Department of Obstetrics and Gynecology ("Ob/Gyn") at the Hospital. Dr. Korman aided, abetted, incited, compelled or coerced the violation of Dr. White's rights in violation of the Human Rights Law and the City Law.

12.     Defendants are employers within the meaning of § 1981, the Human Rights Law and the City Law, and were in virtue of the aforementioned laws, prohibited from discriminating and/or retaliating in employment decisions on the basis of race and gender. Dr. White was in virtue of said laws protected against discrimination and retaliation in employment on the basis of race and gender.

3

## V. **FACTUAL ALLEGATIONS**

13.     Dr. White is a physician duly licenced to practice medicine within the State of New York, and is a specialist in Ob/Gyn.

14.     Dr. White began her employment with SJEH on or about July 1, 2006, as an attending physician in the Hospital's specialty of Ob/Gyn. Upon her employment and in accordance with the policy, practice, rules and procedures and/or bylaws of SJEH, Dr. White was appointed to the Medical Staff of the Hospital as a provisional member and given the privileges to provide medical or other patient care services in the Hospital.

15.     Prior to the time Dr. White began her employment with SJEH, she had received a significant part of her post graduate training as a physician from SJEH. Specifically:

a.     From July 2002 through June 2004, Dr. White successfully completed her Post-Graduate Years 1 and 2 Residency at the Hospital's Department of Ob/Gyn.

b.     From July 2001 through June 2002, Dr. White successfully completed her Post-Graduate Year 1 Residency at the Hospital's Department of Family Practice.

16.     Pursuant to the relevant provision of the Employment Contract, Dr. White's employment with SJEH was for an initial term of one (1) year beginning from July 1, 2006, and, upon expiration of said term, shall continue or be renewed for additional one (1) year terms.

17.     Based upon SJEH policies and procedures, as well as representations made by Dr. Korman and other officials of SJEH, Dr. White reasonably expected that the Employment Contract shall continue to be renewed as a matter course, barring any "just cause" termination on the grounds specified in the Employment Contract.

4

18.    Pursuant to the provisions of the Employment Contract and consistent with the policies and/or practices of SJEH, by letter dated June 18, 2007, SJEH formally notified Dr. White of the renewal of the Employment Contract for an additional one (1) year period from July 1, 2007 through July 1, 2008.

19.    Upon the expiration of the second one (1) year term of employment, by letter dated September 29, 2008, SJEH again, formally notified Dr. White of the renewal of the Employment Contract for a further additional one (1) year term from July 1, 2008 through July 1, 2009.

20.    As demonstrated by the glowing commendations and positive feedbacks Dr. White received from her peers, Resident Staff, House Physicians and/or other staff at the Hospital, Dr. White consistently performed her work satisfactorily throughout her employment at the Hospital, among other things, she provided various types of medical, surgical or other patient care services; cared for and/or supervised the care of unassigned patients; assisted regularly in teaching and training Resident Staff; attended departmental and Medical Staff Society meetings and paid applicable dues. Dr. White had a very good attendance and punctuality record and was recognized for her helpful attitude, dedication and passion for patient care. Dr. White eagerly volunteered to provide coverage for other physicians whenever there was a need for such coverage.

21.    Despite Dr. White's satisfactory job performance and devotion to the service she provided to SJEH at the Hospital, Dr. Korman discriminated against Dr. White by unfairly placing her on probation for no just cause without any documentation and recommending without any justifiable basis to extend her provisional appointment to the Medical Staff for six months.

5

22.     Dr. Korman harbors anti-female/Black bias or sentiment and exhibited such sentiment in the manner he treated Dr. White, other African American female physicians and/or patients at the Hospital, including but not limited to, an African American female Resident physician who was shoved and/or assaulted by Dr. Korman for no just cause. SJEH is fully aware of Dr. Korman's hostile propensity, as well as the discriminatory and retaliatory conduct against Dr. White, and encouraged or condoned such conduct by failing to take any action to remedy the situation, even though Dr. White made several verbal and/or written complaints to each of the following officers of SJEH: John Gupta, Chief Executive Officer, Raymond Pastore, Chief Medical Officer, Mr. Sullivan, Chief Operating Officer and Mr. Roger Franco, Director of Human Resources.

23.     On or about September 24, 2008, without any prior notice or communication to Dr. White that her work performance or conduct was in anyway alleged or deemed to be deficient, in violation of Dr. White's civil rights, the Employment Contract and SJEH's policies and procedures, Dr. Korman verbally informed Dr. White that she was being placed on a poor work performance related probation. At that time, Dr. Korman did not specify the grounds, terms, guideline or parameters for such probation. Nor did he provide Dr. White with any documentation pertaining to such probation.

24.     Upon informing Dr. White that she was on probation, Dr. Korman designated Godwin Onyeike, D.O. (a faculty member at the Hospital and SJEH's Program Director of the Department of Ob/Gyn at the Hospital), to serve as Dr. White's mentor during the probationary period. Dr. Korman did not set nor specify the terms or objectives for such mentoring or remediation action. Nonetheless, Dr. White immediately began to work and consult with Dr. Onyeike.

6

25.     On or about November 5, 2008 (approximately six (6) weeks after Dr. White was notified that she had been placed on probation), by letter dated the same date, Dr. Korman for the first time advised Dr. White, among other things, that he had recommended that Dr. White's provisional appointment to the Medical Staff be extended for six-months time. Dr. Korman also stated by said letter, that Dr. White required significant improvement in the following areas:

- Punctuality with her scheduled assignments.
- Medical knowledge, relating to Obstetrics and Gynecologic standards of care.
- Clinical judgment involving patient care decisions.
- Communication skills involving patients requiring that she demonstrate caring, compassionate and respectful behavior.

26.     Prior to the time Dr White was placed on probation and at all times subsequent thereto, there was never any communication between Dr. Korman and Dr. White regarding Dr. White's punctuality, medical knowledge and/or management of the patient Dr. White cared for at the Hospital.  Dr. Korman never observed nor supervised the patient care or duties Dr. White provided at the Hospital. Dr. White performed high risk obstetrical clinic, on-call duties involving high risk patients who were in labor without supervision or assistance from Dr. Korman.

27.     In an effort to find out the grounds for her probation and the recommended extension of her provisional appointment to the Medical Staff, on or about December 2, 2008, Dr. White initiated a meeting attended by Mr. Franco, Dr. Pastore, Dr. Korman and Dr. Strojan, Chief of Family Practice at the Hospital.

28.     During the December 2, 2008, meeting, Dr. Korman was repeatedly requested for evidence substantiating the performance deficiencies he alleged against Dr. White in his letter of November 5, 2008, but he was unable to do produce or allude to any such evidence, except to state that Dr. White did not report to work at the Hospital by 8:30 a.m.  However, Dr. Korman had no

7

answer when Dr. White pointed out that the male Attending physicians in the department of Ob/Gyn did not report to work by 8:30 a.m. and that none of such male Attendings had been placed on probation. Dr. White also made the point that prior to the extension of her provisional appointment she was not requested to report at the Hospital by 8:30 a.m.

29.     During said meeting and subsequent thereto, Dr. White repeatedly complained to Dr. Korman and other SJEH officials that she was being singled out and discriminated against because of her race and gender. At all relevant times, Dr. White was the only female employed at the Hospital full time as an Attending physician and was treated differently from the male Attending physicians.

30.     At the time Dr. White made said complaints of discrimination, she reasonably believed and still believes that the Dr. Korman was violating her civil rights by discriminating against her on the basis of her race and gender.

31.     As a result of Dr. White's complaints of discrimination, Dr. Korman intensified his discriminatory acts against Dr. White and began to retaliate and subject her to a hostile work environment on the basis of her race and gender, by among other things, procuring trumped-up, frivolous or unwarranted write-ups against her and threatening to terminate her employment unless she resigns from her employment, and upon her failure to resign, report the write-ups and termination to the National Practitioners Data Bank; subjecting her to closer scrutiny and unfair criticism than similarly situated male attending physicians; threatening to terminate her employment on the basis of trumped-up, frivolous and/or unwarranted write-ups if she fails to resign; forcing, coercing and/or intimidating her into resigning from her employment; subjecting her to unfair reprimands, continual harassment, intimidation, verbal abuse and/or insults; her constructive discharge from SJEH's employment; and subjecting her to discriminatory terms conditions or privileges of employment.

8

32.     As a further result of Dr. White's complaint of discrimination, Dr. Korman procured five (5) frivolous, unjustified and/or unwarranted write-ups against Dr. White dated December 9, 2008, December 10, 2008, February 25, 2009 [sic], February 26, 2009 and February 27, 2009, respectively. Thus, Dr. White was written-up five (5) different times within two months of her complaint of discrimination.

33.     Within two weeks after Dr. White's complaint of discrimination, Dr. Korman instructed the Chief Resident at the Hospital, to have Resident physicians evaluate Dr. White's work performance as an Attending. The Chief Resident was later written-up by Dr. Korman because she wanted to know why the Residents were being asked to evaluate only Dr. White, as opposed to all Attending physicians.

34.     By letter dated January 27, 2009, John Gupta, Chief Executive Officer of the Hospital, advised Dr. White that the extension of her provisional appointment was approved by Board of Managers on December 11, 2009.

35.     As a result of Dr. Korman's conduct as alleged in paragraph 31 of this complaint, and incessant badgering by Dr. Korman coercing Dr. White to resign from her employment, on May 7, 2009, by letter dated May 6, 2009, Dr. White gave Dr. Korman four weeks notice of her resignation from the employment of SJEH. Defendants rendered Dr. White's working conditions so intolerable that a reasonable person subject to the same conditions would resign.

36.     From November 5, 2008 through May 29, 2009, Dr. White's work environment was permeated with severe or pervasive discriminatory and/or retaliatory verbal abuse, intimidation, threats, ridicule, and harassment which created an abusive and hostile working environment for Dr. White and altered the conditions of her employment.

9

37.     SJEH was fully aware of the retaliatory and discriminatory conduct against Dr. White and encouraged such conduct by failing to take any action to remedy the situation, even though Dr. White made several complaints in connection thereto.

38.     Defendants breached their obligations and implied covenant of good faith and fair dealing with regard to Dr. White by engaging in the unlawful acts and practices alleged herein and by procuring trumped-up, frivolous or unwarranted write-ups against her and threatening to terminate Dr. White's employment unless she resigns from her employment, and upon such termination, report the write-ups and termination to the National Practitioners Data Bank.

## FIRST CAUSE OF ACTION AGAINST DEFENDANTS
### § 1981 DISCRIMINATION

39.     Dr. White repeats and realleges each and every allegation contained in paragraphs 1 through 38 of this Complaint with the same force and effect as if set forth herein.

40.     By the acts and practices described herein, Defendants have discriminated against Dr. White in the terms and conditions of her employment on the basis of her race in violation of § 1981.

41.     In taking the above-described discriminatory actions, Defendants acted with malice and/or reckless indifference to Dr. White's rights under § 1981.

42.     As a result of Defendants' discriminatory acts and practices, Dr. White has suffered and will continue to suffer irreparable injury, loss of substantial retirement benefits, medical and life insurance benefits, salary or wages, bonus, stock purchase option, pension, retirement package, long term disability, personal accident insurance benefits, incentive savings, emotional distress, and other monetary damages unless and until this Court grants relief.

10

## SECOND CAUSE OF ACTION AGAINST DEFENDANTS
## HUMAN RIGHTS LAW AND CITY LAW DISCRIMINATION

43.     Dr. White repeats and realleges each and every allegation in paragraphs 1 through 42 of this Complaint with the same force and effect as if set forth herein.

44.     By the acts and practices described herein, Defendants have discriminated against Dr. White in the terms and conditions of her employment on the basis of her race and gender in violation of the Human Rights Law and the City Law.

45.     In taking the above-described discriminatory actions, Defendants acted with malice and/or reckless indifference to Dr. White's right under the Human Rights Law and the City Law.

46.     As a result of Defendants' discriminatory acts, Dr. White has suffered and will continue to suffer irreparable injury, loss of substantial retirement benefits, medical and life insurance benefits, salary or wages, bonus, stock purchase option, pension, retirement package, long term disability, personal accident insurance benefits, incentive savings, emotional distress, and other monetary damages unless and until this Court grants relief.

## THIRD CAUSE OF ACTION AGAINST DEFENDANTS
## HUMAN RIGHTS LAW AND CITY LAW RETALIATION

47.     Dr. White repeats and realleges each and every allegation contained in paragraph 1 through 46 of this Complaint with the same force and effect as if fully set forth herein.

48.     In retaliation for Dr. White's complaints about Defendants' discriminatory acts, Defendants adversely affected Dr. White's employment.

49.     In taking the above-described retaliatory actions, Defendants acted with malice and reckless indifference to Dr. White  rights under the Human Rights Law and the City Law.

11

50.     As a result of Defendants' retaliatory acts, Dr. White has suffered and will continue to suffer irreparable injury, loss of substantial retirement benefits, medical and life insurance benefits, salary or wages, bonus, stock purchase option, pension, retirement package, long term disability, personal accident insurance benefits, incentive savings, emotional distress, and other monetary damages unless and until this Court grants relief.

## FOURTH CAUSE OF ACTION AGAINST SJEH
## BREACH OF CONTRACT AND IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, NEW YORK COMMON LAW

51.     Dr. White repeats and realleges each and every allegation contained in paragraph 1 through 50 of this Complaint with the same force and effect as if fully set forth herein.

52.     The Employment Contract has implied covenant of good faith and fair dealing.

94.     SJEH by and through the conduct of Dr. Korman breached their contractual obligations and implied covenant of good faith and fair dealing with respect to Employment Contract.

95.     As a result of Defendants' breach of contract, discriminatory and retaliatory acts, Dr. White has suffered and will continue to suffer irreparable injury, loss of substantial retirement benefits, short term disability benefits, medical and life insurance benefits, salary or wages, bonus, stock purchase option, pension, retirement package, long term disability, personal accident insurance benefits, incentive savings, emotional distress, and other monetary and equitable damages unless and until this Court grants relief.

12

## VI.  **PRAYER FOR RELIEF**

**WHEREFORE**, Dr. White respectfully requests that this Court enter a judgment:

(a)  declaring that the acts and practices complained of herein are in violation of § 1981, the Human Rights Law, the City Law and the Common Law of the State of New York;

(b)  enjoining and permanently restraining these violations of § 1981, the Human Rights Law, and the City Law;

(c)  directing Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect her employment opportunities;

(d)  directing Defendants to make her whole for all earnings she would have received but for Defendants' unlawful conduct, including, but not limited to, wages, salary raises, pension, bonuses, retirement benefits, medical and life insurance benefits, stock purchase options, long term disability benefits, personal accident insurance benefits, incentive savings and other lost benefits;

(e)  directing Defendants to pay her an additional amount as compensatory damages for her pain and suffering and emotional distress;

(g)  directing Defendants to pay her an additional amount as punitive damages for their willful and/or reckless disregard for her statutory rights;

(h)  awarding her such interest as is allowed by law;

(i)  awarding her reasonable attorneys' fees and costs; and

(j)  granting other such and further relief as this Court deems necessary and proper.

## VII.   <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Dr. White demands a trial by jury.

Dated:       Brooklyn, New York
             June 1, 2009

                              LAW OFFICE OF VINCENT I. EKE-NWEKE, P.C.

                              By: _____
                                    Vincent I. Eke-Nweke (VE 5282)
                                    Attorney for the Plaintiff
                                    498 Atlantic Avenue
                                    Brooklyn, New York 11217
                                    (718) 852-8300

14